## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ARCH INSURANCE COMPANY,　　　　*

　　　Plaintiff,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　Civ. Action No. RDB-17-3652
　　　v.　　　　　　　　　　　　　*

U.S. SILICA COMPANY,　　　　　*

　　　Defendant.　　　　　　　　*


*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

### MEMORANDUM OPINION

Plaintiff Arch Insurance Company ("Arch") of Jersey City, New Jersey initially commenced this lawsuit alleging that Defendant, U.S. Silica Company ("Silica"), of Frederick, Maryland, had breached its contractual obligations by failing to document the transfer of its rights against a third party, Union Pacific Railroad Company ("Union Pacific"), to Arch. (ECF No. 22.) Previously, Silica moved to dismiss Arch's Amended Complaint, arguing, *inter alia*, that it had in fact executed an assignment of its rights to Arch, thereby satisfying its obligations. As Arch's Amended Complaint failed to explain why the executed assignment was inadequate, this Court dismissed Arch's Amended Complaint without prejudice and permitted Arch to file a Second Amended Complaint.

Arch's Second Amended Complaint acknowledges that Silica has executed an assignment of claim, but alleges that this assignment is nevertheless "unacceptable" because it contains language Arch finds objectionable and omits language it desires. This second amended pleading brings five Counts, styled as follows: breach of contract (Counts I and II);

specific performance (Count III); and declaratory relief and judgment (Counts IV and V). Silica has once again moved to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). (ECF No. 23). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). Put simply, Arch has again failed to articulate why Silica' executed Assignment of Claim fails to satisfy its contractual obligations. For this reason, and as more fully set forth herein, Silica's Motion to Dismiss (ECF No. 23) is GRANTED and Arch's Complaint, as amended (ECF Nos. 1, 15, 22), is now DISMISSED WITH PREJUDICE in its entirety.

## BACKGROUND

### I.   Factual Allegations.

The background of this case has been summarized in a prior opinion of this Court. *See Arch Ins. Co. v. U.S. Silica Co.*, RDB-17-3652, 2018 WL 4562939, at *1-2 (D. Md. Sept. 24, 2018). Jurisdiction of this Court is predicated on diversity of citizenship under 28 U.S.C. § 1332. The facts and circumstances giving rise to this litigation are further addressed below. In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This Court may also consider documents "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Parker v. United States Postal Service*, Civ. A. No. RDB-15-562, 2016 WL 7338412 (Dec. 19, 2016) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)); *see also* Fed. R. Civ. P. 10(c). In recounting the background of this case, this Court takes judicial notice

of the documents attached to Arch's original Complaint and subsequent amendments thereto, including contracts executed by the parties, assignments of claims proposed by Arch and Silica, and a lengthy series of emails between counsel for Plaintiff and Defendant.

### A. The Industry Track Agreement.

On or around November 26, 2008, Defendant Silica and a third party, Union Pacific, entered into an Industry Track Agreement governing the use and operation of a railway track which runs through a Silica facility located in Pacific, Missouri. (ECF No. 22 at ¶ 14.) Under Article 9 of the Industry Track Agreement, Union Pacific owes indemnity to Silica "from and against any and all claims for loss arising from or growing out of the negligent acts or omissions of the Railroad." (*Id.* at ¶ 16.) The Industry Track Agreement contained an anti-assignment condition and a provision which purports to limit Silica's rights of recovery against Union Pacific. (Pl.'s Ex. B, ECF No. 1-2; Pl.'s Ex. G at 19-20, ECF No. 22-2.)

### B. The Liability Insurance Policy.

Plaintiff Arch issues liability insurance policies. (*Id.* at ¶¶ 8, 10.) Arch and Silica entered into an insurance contract whereby Arch issued a primary commercial general liability policy to Silica as the named insured for a one-year period beginning September 1, 2013 and ending September 1, 2014 (the "Arch Policy"). (*Id.* at ¶ 8.) The Arch Policy included a $250,000 self-insured retention and up to $1,750,000 of liability insurance per occurrence against covered "bodily injury." (*Id.* at ¶ 10.) Additionally, the Arch Policy contained "Commercial General Liability Conditions" which states in relevant part as follows:

**SECTION IV. COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

. . .

c. You and any other involved insured must:

. . .

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of any injury or damage to which this insurance may also apply.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those right to us and help us enforce them.

(Pl.'s Ex. A, ECF No. 15-2 at 45, 47.)

### C. The Mediation Agreement.

On or about May 2, 2014, Kevin King, Jr. filed a complaint against his employer, Union Pacific, under 45 U.S.C. §§ 51-60, the Federal Employers' Liability Act, claiming that he suffered injuries as a result of Union Pacific's alleged negligence (the "*King* claim"). (*Id.* at ¶ 20.) Mr. King later amended his complaint, adding Silica as a defendant. (*Id.* at ¶ 22.) In the summer of 2015, Union Pacific, Silica, Arch, and National Union Fire Insurance Company of Pennsylvania ("National Union")[1] negotiated toward a resolution of the *King* claim. (*Id.* at ¶ 24.) On or around August 24, 2015, the parties entered into an agreement setting forth each of their assumed obligations in connection with the settlement efforts and respective positions regarding such obligations (the "Mediation Agreement"). (*Id.* at ¶ 25.) The Mediation Agreement provided that "$1,750,000 of any such settlement shall be paid by Arch on behalf of U.S. Silica above U.S. Silica's self-insured retention" and "U.S. Silica shall provide

---

[1]    National Union Fire Insurance Company of Pennsylvania provided liability insurance to Silica in excess of Silica's retention and the Arch Policy. (ECF Nos. 15 at ¶ 24 & 19, n.1.) National Union is a subsidiary company and affiliate the American International Group ("AIG").

cooperation to Arch . . . in any post settlement proceeding pursued by Arch . . . against Union Pacific." (*Id.* at ¶ 25.) Ultimately, Arch paid $1,750,000 toward settling the *King* claim on behalf of U.S. Silica above U.S. Silica's self-insured retention, and Mr. King released all claims against Silica and Arch. (*Id.* at ¶ 28).

### D. Efforts to Execute an Assignment of Claim.

Since settling the *King* claim, Arch has initiated attempts to recover its payment from Union Pacific, including through informal negotiation and mediation. (*Id.* at ¶¶ 30-31.) Through arbitration, Arch now intends to pursue reimbursement from Union Pacific of the $1,750,000 payment it made to resolve the *King* claim. (*Id.* at ¶ 32.) It is Arch's position that Missouri law would govern its derivative subrogation claim for reimbursement from Union Pacific and that Missouri law requires Silica to transfer its rights against Union Pacific to Arch before Arch can pursue arbitration. (*Id.* at ¶¶ 33-34.)

On February 22, 2017, Arch requested that Silica join it in arbitration against Union Pacific or, alternatively, demanded that Silica transfer its claims against Union Pacific to Arch. (*Id.* at ¶ 33.) Arch's Complaint, as amended, attaches over thirty pages of email exchanges detailing the parties' efforts to execute a mutually agreeable assignment of claim. (Pl.'s Ex. G, ECF No. 22-2.) Subsequently, the parties exchanged several versions of proposed assignments of Silica's claims against Union Pacific. On March 28, 2017, Arch provided its first proposed assignment, dated April 2017 (the "April 2017 Assignment") for Silica's response. (Pl.'s Ex. G at 26–27, ECF No. 22-2.) On April 20, 2017 and on May 10, 2017, Arch notified Silica that it intended to revoke the April 2017 Assignment. (*Id.* at 23–25.)

On June 9, 2017, Arch provided a second proposed assignment (the "June 2017 Assignment") and represented to Silica that "if you wish to make changes to the proposed Assignment, we will be happy to consider them." (Pl.'s Ex. G at 21, ECF No. 22-2.) Later that month, Silica's counsel sent emails to Arch's counsel seeking additional information about the propriety of its proposed claims against Union Pacific. (*Id.* at 19-22.) Among other questions posed, Silica's counsel inquired about the effect of the Industry Track Agreement's anti-assignment condition and whether the anti-subrogation rule[2] prohibited Arch from pursuing Silica's claims against Union Pacific, which was insured by Arch. (*Id.*) On July 5, 2017, Arch's counsel responded by arguing that the anti-assignment provision did not apply and stated that he had no intention of addressing Silica's remaining questions, as they "apply to defenses that [Union Pacific] may have in the arbitration hearing." (*Id.* at 18.) Additionally, counsel for Arch intimated that Arch would be pursuing litigation if Silica did not provide an executed Assignment of Claim. (*Id.*) The parties exchanged further emails but did not resolve Silica's objections to the proposed June 2017 Assignment. (*Id.* at 15-17.)

On August 29, 2017, Silica provided to Arch an alternative proposed assignment (the "August 2017 Assignment"). (*Id.* at 9-12.) In an email, Silica's counsel explained that the company was willing to execute an assignment of claim to avoid litigation threatened by Arch. (*Id.*) Counsel for Silica reiterated his prior questions and represented that the August 2017 Assignment incorporated changes designed to address perceived deficiencies in the proposed June 2017 Assignment. (*Id.*) Specifically, the August 2017 Assignment includes a provision

---

[2] "Under the so-called 'antisubrogation rule,' an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." Francis C. Amendola, *et al.*, 46A Corpus Juris Secundum Insurance § 2022 (June 2019).

which the Second Amended Complaint characterizes as a "waiver or release term" and also omits language affirming Silica's duty to cooperate with Arch. (Second Am. Compl. ¶ 38.) The Complaint does not attach a response to Silica's email and its attached August 2017 Assignment; Silica represents that Arch did not respond at all. (ECF No. 23-1 at 8.)

## II. Procedural History.

The parties did not execute an Assignment before this case commenced despite months of e-mail exchanges designed to accomplish this goal. On December 8, 2017 Arch filed suit in this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, asserting claims for breach of contract (Counts I and II), specific performance (Count III), and declaratory relief and judgment (Counts IV and V) ("Original Complaint"). (ECF No. 1.) In addition to its request for specific performance and declaratory relief, Arch sought damages in the amount of $1,750,000.00. (*Id.* at 7–8.) Although the Complaint has been amended several times, Arch continues to pursue the same claims and seeks the same relief.

The procedural history of this case is complicated by Arch's inadvertent attachment of different drafts of the proposed assignment of claim (the April 2017 Assignment, the June 2017 Assignment, and the August 2017 Assignment) to three amendments to the Complaint. Arch's original Complaint sought specific performance in the form of Silica executing the August 2017 Assignment, attached as Exhibit G to the Complaint. (ECF No. 1 at ¶ 55, Ex. G.) On January 18, 2018, Silica executed that assignment and returned it to Arch. (Second Am. Compl. ¶ 44.) Six days later, on January 24, 2018, Arch clarified that Exhibit G to its original complaint "was clearly a clerical error," as the executed August 2017 Assignment was not proposed by Arch to Silica, but instead proposed by Silica to Arch. (ECF No. 22-2 at 2.)

On February 6, 2018, Arch filed its First Amended Complaint to correct its error. (Am. Compl., ECF No. 15.) The only substantive difference between the original Complaint and Arch's Amended Complaint was the replacement of the August 2017 Assignment for the June 2017 Assignment. (*Id.* at 1 n.1.) On February 16, 2018, Silica moved to dismiss Arch's First Amended Complaint. (ECF No. 16.) Silica claimed that Arch had not stated a claim for breach of either the Arch Policy or the Mediation Agreement, as Silica transferred its claims against Union Pacific to Arch through its execution of the August 2017 Assignment. (*Id.*) On September 24, 2018, this Court granted Silica's Motion to Dismiss the Amended Complaint, reasoning that Arch had failed to adequately explain why the August 2017 Assignment of Claim did not fulfill Silica's obligations under the Arch Policy and Mediation Agreement. (ECF No. 19, at 7-8.) Given the unique circumstances presented by this action, however, this Court dismissed the Complaint without prejudice and permitted Arch to file a Second Amended Complaint. (*Id.*)

Arch filed its Second Amended Complaint on October 8, 2018, asserting—as in the original Complaint and Amended Complaint—causes of action for breach of contract, specific performance, and declaratory relief. (ECF No. 22). The October 2018 Complaint charges that:

> [t]o date, Silica has refused to execute the proposed Assignment of Claim proffered by Arch, or to take any action to document the transfer of its rights against Union Pacific to Arch other than to execute an assignment it knows is unacceptable to Arch given its unilateral addition of a waiver/release provision and its omission of any reference to Silica's duty to cooperate with Arch post assignment.

> (*Id.* at ¶ 44.)

To that end, Arch requests specific performance, namely, that Silica "complete[] the Assignment of Claim attached hereto in Exhibit H." Exhibit H to Arch's Second Amended Complaint is the April 2017 Assignment. (Pl.'s Ex. H, ECF No. 22.) This appeared to be a mistake, as Arch had previously sought to enforce the June 2017 Assignment.

Currently pending is Silica's Motion to Dismiss the Second Amended Complaint (ECF No. 23) ("Motion to Dismiss"), which argues that Arch's amended pleading fails to state a claim for breach of either the Arch Policy or the Mediation Agreement. Silica's motion anticipates that Arch has once again attached the incorrect Assignment to its pleading, and that it instead intended to pursue specific enforcement of the June 2017 Assignment. (*Id.* at 17–18.) Silica argues that, irrespective of which proposed agreement Arch seeks to enforce, Arch fails to state a claim for breach of either contract because Silica has already executed the August 2017 Assignment. (ECF No. 23 at 2.)

On November 12, 2018, Arch filed its Memorandum in Opposition to U.S. Silica Company's Motion to Dismiss, confirming that it had mistakenly appended the April 2017 Assignment to its Second Amended Complaint. (ECF No. 26-1 at 2.) Arch argues that Silica's alleged breach of contract may be cured only by execution of the June 2017 Assignment. (*Id.* at 2, 11, 12.) Arch avers, however, that it is also "willing to accept" another proposed assignment (the "January 2018 Assignment") which was drafted after the original complaint was filed in this case. (*Id.* at 3, 16, n.12.) In sum, Arch has presented four different versions of the Assignment in its pleadings. It now clarifies that it seeks specific performance of the June 2017 Assignment or, alternatively, of the January 2018 Assignment.

**STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirecTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678; *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

## ANALYSIS

### I. Arch Has Failed to State a Claim Based on Silica's Refusal to Accept Its Preferred Assignment of Claim.

All five Counts of Arch's Second Amended Complaint are premised on Arch's contention that Silica has breached both the Arch Policy and the Mediation Agreement by refusing "to execute the proposed Assignment of Claim proffered by Arch, or to take any action to document the transfer of its rights against Union Pacific to Arch," save for executing the August 2017 Assignment. (Second Am. Compl. ¶ 44, ECF No. 22.) As to the August 2017 Assignment which Silica executed, Arch repeatedly alleges that it is "unacceptable" because it adds a waiver or release provision and omits a cooperation provision Arch desires. (*Id.* at ¶¶ 49, 54, 63.) Silica seeks dismissal of the Second Amended Complaint in its entirety.[3] It argues that Arch's factual allegations, taken as true, do not establish a breach of contract claim because its execution of the August 2017 Assignment satisfies any duty it had to document the transfer of its rights to Arch. Silica maintains that neither the inclusion of the "waiver or release" provision nor the exclusion of cooperation language runs afoul of the Arch Policy and Mediation Agreement.

Under Maryland law, a breach of contract claim consists of three elements: "contractual obligation, breach, and damages." *Kantsevoy v. LumenR LLC*, ELH-17-0359, 2019 WL 1441982, at *9 (D. Md. April 1, 2019) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015)). Ultimately, "the plaintiff must show that the defendant owed [it] a contractual obligation and that the defendant breached that obligation." *Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015) (citing *Taylor v. NationsBank,*

---

[3] Arch's opposition contends that Silica's Motion to Dismiss failed to argue that Counts IV and V of the Second Amended Complaint should be dismissed. (ECF No. 26-1, at 18, 18 n.14.) This is incorrect. The Motion to Dismiss seeks dismissal of the Second Amended Complaint in its entirety. It argues that all five counts of the Complaint rest on Silica's allegation that the August 29, 2017 Assignment is "not an acceptable assignment" and challenges this assertion. (*See, e.g.*, ECF No. 23-1, at 2-3, 13-14.)

*N.A.*, 365 Md. 166, 776 A.2d 645, 651 (2001)). To the extent that Arch claims that Missouri law or New Jersey law applies,[4] the essential elements of a breach of contract claim do not significantly differ in those states. *See Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. Ct. App. 2017); *EnviroFinance Group, LLC v. Environmental Barrier Co., LLC*, 440 N.J. Super. 325, 345, 113 A.3d 775 (App. Div. 2015).

Arch's allegations fail to establish a breach of contract claim. Assuming *arguendo* that Silica was bound by an obligation under either the Mediation Agreement or the Arch Policy to assign its claims to Arch, the Second Amended Complaint fails to explain why Silica's execution of the August 2017 Assignment falls short of this obligation.

### A. The Second Amended Complaint Fails to Establish that the "Waiver or Release" Provision Violates the Parties' Prior Agreements.

Arch contends that the August 2017 Assignment is unacceptable because its contains a "waiver or release term" that violates the Arch Policy and Mediation Agreement. (ECF No. 22 at ¶¶ 38, 49, 54, 63.) The contested provision reads as follows: "Notwithstanding the foregoing, Assignee agrees that, through this Assignment of Claim, Assignor has complied with the conditions in Assignee's insurance policy relating to the *King* Lawsuit." (ECF No. 22-4.) Arch is concerned that this language will relieve Silica of any further duties to assist Arch in its arbitration proceedings. (ECF No. 26-1 at 15.) In both its amended pleadings and its opposition brief, Arch summarily asserts that the Arch Policy and the Mediation Agreement require Silica to assign its claims without conditional language of this kind. (ECF No. 26-1 at 16.)

---

[4]     Arch is a New Jersey company and maintains that Missouri law would govern its claims against Union Pacific. The parties have not presented any arguments concerning the law governing this contract dispute.

Arch's submissions fail to explain why the contested provision violates the Arch Policy and the Mediation Agreement. Arch presents no legal authority or argument to support this proposition. The Second Amended Complaint's core allegation is that Silica has failed to "document[] the transfer of its rights against Union Pacific to Arch by assignment or otherwise" in violation of the Arch Policy and the Mediation Agreement. (Second Am. Compl. ¶¶ 44, 47, 48, 53, 54.) It further contends, without further elaboration, that the August 2017 Assignment executed by Silica is "unacceptable" in part because it includes a "waiver or release term." This Court is not bound to Arch's legal conclusion that the so-called "waiver or release term" contained in the August 2017 Assignment runs afoul of the Arch Policy and Mediation Agreement. *See Iqbal*, 556 U.S. at 678. Arch's briefing sheds no further light on this issue, offering only the conclusory argument that "Arch was always and remains entitled to a written assignment of Silica's rights against Union Pacific . . . without Silica putting further conditions on that assignment . . . ." (ECF No. 26-1 at 16.) Because Arch's Second Amended Complaint and subsequent briefing fails to articulate precisely why the "waiver or release" language violates the Arch Policy and Mediation Agreement, Arch has not stated a claim on this basis.

### B. The Second Amended Complaint Fails to Establish that Silica Must Include Cooperation Language in its Assignment of Claim.

Arch also argues that Silica has breached its contractual obligations under the Arch Policy and the Mediation Agreement because the August 2017 Assignment does not include a cooperation provision. (ECF No. 22 at ¶¶ 49, 54.) While Arch's opposition brief admits that it was once willing to accept an assignment which omitted such language, it now prefers a cooperation provision given the apparent breakdown in negotiations between the parties.

(ECF No. 26-1 at 15 n.11.) The desired cooperation language, which appears in the June 2017 Assignment, would state as follows:

> [Silica], pursuant to its duties as an insured and its agreement under the August 24, 2015 Mediation Agreement, agrees to cooperate with [Arch and National Union], including but not limited to producing relevant information and making witnesses available to provide truthful and accurate testimony on relevant issues that arise in the arbitration for the claims for reimbursement/indemnity for the claimed Loss.

> (Pl.'s Ex. G, ECF No. 15-8.)

The Second Amended Complaint presents no basis for the conclusion that the omission of this language violates the Arch Policy and Mediation Agreement. Such language would merely duplicate similar cooperation language which appears in the Arch Policy and Mediation Agreement, to which the parties are already bound. (*See* Pl.'s Ex. E, ECF No. 1-5.) It is Arch's burden to explain why the exclusion of this language violates the parties' prior agreements. The Second Amended Complaint gives no indication as to why this is so. Accordingly, Arch has not stated a claim based on the omission of its desired cooperation language.

In sum, Arch has failed to adequately allege and explain why the August 2017 Assignment does not satisfy Silica's alleged obligation to "transfer its rights against Union Pacific by assignment or otherwise to Arch." (Second Am. Compl. at ¶¶ 48, 53.) Accordingly, Counts I and II are DISMISSED WITH PREJUDICE. As Count III merely seeks specific

performance based on the same allegations iterated in Counts I and II, it is likewise DISMISSED WITH PREJUDICE. [5]

## II.    Arch Has Failed to State a Claim Based on Silica's Alleged "Delay."

The Second Amended Complaint alleges that Silica has failed to honor its contractual duty to cooperate with Arch by "including, but not limited to" failing to document the transfer of its rights against Union Pacific to Arch.  (Second Am. Compl. ¶¶ 47, 48, 53, 54.)  Despite this inclusive language, however, Arch does not allege that Silica breached its obligations in any other manner.  Instead, Arch makes brief reference to Silica's "unnecessary and potentially prejudicial dilatory tactics."  (*Id.* at ¶ 36.)  These "tactics" are defined to include "but [are] not limited to, revisiting points and terms already discussed, demanding immaterial details and information (such as the distribution of any proceeds arising out of Arch's intended claim against Union Pacific."  (*Id.*)   In its opposition brief, Arch makes vague suggestions that Silica engaged in "delay" that "plausibly may preclude [Arch's] recovery attempts [from Union Pacific]." (ECF No. 26-1 at 13.)

To the extent that Arch intends to state a claim based on these oblique references to dilatory tactics which were merely "*potentially* prejudicial," it has failed to do so.  (*Id.*) (emphasis added.)  The Second Amended Complaint does not allege that Silica's "tactics" violated Silica's obligations, nor does it specify with any particularity what "immaterial details" Silica demanded or even why they were "immaterial."  Arch's Complaint merely refers this Court to Exhibit G, the lengthy email chain discussed *supra*.  This simply will not suffice.  Accordingly, to the extent

---

[5]        Because this Court finds that the Second Amended Complaint fails to adequately allege a breach of the Arch Policy and the Mediation Agreement, this Court need not address Defendant's argument that Plaintiff has failed to sufficiently allege that Silica's breach has caused Arch damages or that Arch's alternative proposed assignments are unsupportable.

that Arch intends to state a claim based on Silica's alleged dilatory tactics, such claim is DISMISSED WITH PREJUDICE.

### III.    Arch's Request For Declaratory Relief is Unavailing.

In Counts IV and V of the Second Amended Complaint, Arch seeks a "Declaratory Judgment, decreeing that . . . Silica is obligated under the Arch Policy to cooperate with Arch in Arch's post settlement proceeding to recover against Union Pacific the payment made to settle the King Claim including, but not limited to, the transfer of its rights against Union Pacific by assignment or otherwise to Arch." (Second Am. Compl. at 13, 15.)  Elsewhere, Arch seeks a more specific declaration that Silica must execute the Assignment of Claim "as attached hereto in Exhibit H," which, as previously discussed, is in fact the wrong Assignment of Claim. (*Id.* at ¶¶ 74, 84.) Arch asserts that such a decree would "provide relief from the uncertainty, insecurity and controversy giving rise to this action."  (Id. at ¶¶ 73, 83.) Silica seeks dismissal of these Counts, arguing that they are premised on Arch's misguided and vague allegations that Silica has breached its contractual obligations by failing to document the transfer of Silica's rights against Union Pacific to Arch.

The Declaratory Judgment Act, 28 U.S.C. § 2201, requires a Plaintiff to plead three factors: (1) "an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the presiding court "must possess an independent basis for jurisdiction over the parties; and (3) the court must decide whether to exercise its discretion to determine or dismiss the action." *Siple v. First Franklin Fin. Corp., et al.*, RDB-14-2841, 2015 WL 2374414, at *5 (D. Md. May 15, 2015) (citing *Clay v. Chase Bank USA, N.A.*, Civ. A. No. 08:10–2169–AW, 2011 WL 1066570, *5 (D. Md. Mar. 21, 2011))

(internal quotation marks omitted). Declaratory relief must be of a "specific" and "conclusive" character. *Proa v. NRT Mid Atlantic, Inc.*, 477 F. Supp. 2d 677, 680 (D. Md. 2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461 (1937)). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Siple*, 2015 WL 2374414, at *5 (citing *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

It is unclear how this Court's proposed decree that Silica must cooperate with Arch by, "including, but not limited to," transferring its rights against Union Pacific to Arch would resolve any controversies in this matter. Such an open-ended decree would certainly not be "specific" or "conclusive." All acknowledge that Silica has already executed an assignment. It is unclear why directing Silica to do so once again is required. Arch's desired relief appears to flow from its core allegation that Silica has failed to transfer its rights to Arch in the manner it prefers. As this Court has explained *supra*, this allegation is unavailing. Accordingly, Counts IV and V are also DISMISSED WITH PREJUDICE.

## CONCLUSION

Arch's Second Amended Complaint fails because of its contradictions and lack of clarity. On the one hand, it alleges that Silica is in breach because it has failed to document the transfer of its rights against Union Pacific to Arch "by assignment or otherwise." (Second Am. Compl. ¶¶ 48, 54.) On the other hand, it acknowledges that Silica has executed an assignment of claim. This executed assignment certainly documents the transfer of its rights. Although the Second Amended Complaint repeatedly claims that this assignment is

"unacceptable" because it contains a waiver or release provision and omits cooperation language, Arch has not presented sufficient factual allegations to support this conclusion. Arch has failed to articulate precisely *why* the Arch Policy and the Mediation Agreement foreclose the waiver provision Silica seeks or requires the cooperation language Arch demands. As all five Counts contained in the Second Amended Complaint are premised on Arch's vague contention that the August 2017 assignment is "unacceptable" under the Arch Policy and the Mediation Agreement, the Second Amended Complaint must be dismissed in its entirety.

For the reasons stated above, Defendant Silica's Motion to Dismiss (ECF No. 23) is GRANTED and Plaintiff Arch's claims (Counts I-V) are DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated: July 15, 2019


_____/s/_____
Richard D. Bennett
United States District Judge